No. 26-1699

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

———————————————

State of California, *et al.*,

*Plaintiffs-Appellees*,

v.

Markwayne Mullin, *et al.*,

*Defendants-Appellants*.

———————————————

On Appeal from the United States District Court
for the District of Massachusetts

———————————————

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL

———————————————

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

TIBERIUS DAVIS
*Counsel to the Assistant Attorney General*
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202)-860-8970

*Counsel for Defendants*

President Trump restricted the entry of certain H-1B nonimmigrants without a $100,000 payment in order to protect American workers and national security. 90 Fed. Reg. 46,027 (Sep. 24, 2025) (Proclamation). That was well within the President's broad authority to impose "any restrictions he may deem to be appropriate" or "such limitations and exceptions as [he] may prescribe" on "the entry of aliens." 8 U.S.C. §§ 1182(f), 1185(a)(1).

Plaintiff States' primary response is that the statutes did not clearly delegate the taxing power. As the first court to review this Proclamation held, however, the "language-'any regulation'-is sufficiently broad to encompass a regulation requiring an additional payment obligation for entry." *Chamber of Com. of the U.S. v. U.S. Dep't of Homeland Sec.*, 815 F. Supp. 3d 73, 100–01 (D.D.C. 2025). The payment is justified under the commerce or immigration powers, and is justifiable regardless of whether the payment is a tax or not. Moreover, Plaintiffs lack a cause of action; their contrary arguments are baseless and invite a circuit split. The remaining stay factors clearly favor the Government. Undermining the President's important policy threatens the American economy and national security, whereas a short stay of the district court's will not harm Plaintiffs, who waited months to file this suit.

1

## ARGUMENT

**I.      Defendants Are Likely to Prevail on the Merits.**

**A. The Proclamation Falls Within the INA's Delegations.**

The Proclamation's payment is lawful because it falls well within Congress's broad delegations in Sections 1182(f) and 1185(a). Plaintiffs falsely accuse the Government of not engaging with the text of the delegation. Resp.8. The Government thoroughly explained why the "sweeping" delegation to impose "any restrictions he may deem to be appropriate" naturally encompasses a per-alien payment in this context. *Trump v. Hawaii,* 585 U.S. 667, 684 (2018) (quoting 8 U.S.C. § 1182(f)); Mot.7, 13-14. The modifier "any" has "an expansive meaning[.]" *Rep. of Iraq v. Beaty*, 556 U.S. 848, 856 (2009). That broad language clearly justifies the payment, especially given the historical pedigree of such per-alien payments. *See Edye v. Robertson*, 112 U.S. 580, 589, 595 (1884) (upholding per alien payment); *Chamber*, 815 F. Supp. 3d at 100–01 (upholding payment as a tax given the breadth of the delegation).

Plaintiffs thus insist that there is a special "clear" statement rule for the delegation of taxes. Resp.9. But the Supreme Court has said the taxing power does not "create a special nondelegation rule for revenue-raising legislation." *F.C.C. v. Consumers' Rsch.*, 606 U.S. 656, 674 (2025). And *Skinner v. Mid-Am. Pipeline Co.* makes apparent that the Supreme Court "discern[s] nothing in this placement of the

2

Taxing Clause that would distinguish Congress' power to tax from its other enumerated powers." 490 U.S. 212, 220–21 (1989). Given this, Plaintiffs offer no reason why the clarity for taxes would be different when the delegation authority is treated equally. *Contra* Resp.10.

More fundamentally, no clear statement is required because the payment is amply justified under the commerce or immigration powers. Indeed, the Supreme Court upheld a similar alien head count payment "not [under] the taxing power" but as a "regulation of commerce." *Edye*, 112 U.S. at 589, 595. That resolves this case.

Plaintiffs do not dispute that a one-time, per-alien payment imposed as a condition of entry is not necessarily a tax. Instead, Plaintiffs attempt to distinguish *Edye* by claiming it was a fee to cover the costs of caring for aliens. Resp.11. But that ignores the Supreme Court's rationale for upholding the payment as an exercise of the commerce power: "the real purpose and effect of the statute" was to "regulate immigration," including for the "protection of their own citizens." *Edye*, 112 U.S. at 589, 595; *see also Chicago & N. W. Transp. Co. v. Webster Cnty. Bd. of Sup'rs*, 71 F.3d 265, 267 (8th Cir. 1995) (payment was "used solely to regulate immigration"). The regulatory nature, not what the money went to, is what mattered. Even so, the payment was not simply to cover the costs of services as Plaintiffs insist; it was broadly for the "general purposes and expenses of carrying this act into effect[,]" including "to mitigate the evils" created by the entry of aliens and for "the protection

3

of the citizens among whom they are landed." *Edye*, 112 U.S. at 590, 595-96, 600 (money went to Treasury). Similarly, the Payment imposed by the Proclamation is intended to mitigate the evils resulting from widespread abuse of the H-1B program. The fact that the payment here is not collected for a more specific purpose does not make it a tax.

Further, the "right" to exclude aliens "stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950); *see also Mullin v. Al Otro Lado*, 2026 WL 1825741, at *13 (U.S. June 25, 2026) (Thomas, J., concurring). Plaintiffs' only answer is that a tax is different in kind from an entry restriction. Resp.12-13. That is question-begging and wrong. The point of *Merrion v. Jicarilla Apache Tribe* is that "the power to exclude" "necessarily includes the lesser power to place conditions on entry… such as a tax." 455 U.S. 130, 141, 144, 148 (1982). Plaintiffs attempt to distinguish *Merrion* on the ground that it involved an Indian tribe, but the federal government surely has at least the same sovereign power to exclude aliens as Indian tribes do to exclude non-Indians.

Plaintiffs next argue that even if the Proclamation's payment requirement can be upheld as a delegation of commerce or foreign-affairs powers in Sections 1182(f) and 1185(a), it still must satisfy the heightened clear-statement rule for tax delegations to avoid circumvention of that standard. Resp.13. But this ignores the

4

many cases where the Supreme Court has upheld a law under one power even if it would fail another applicable power, as in *Edye*. 112 U.S. at 595-96 (upholding payment under commerce power even if it violates taxing clause); *NFIB v. Sebelius*, 567 U.S. 519, 547-61, 567-68 (2012) (mandate violated Commerce Clause but upheld as a tax). An exercise of authority does not need to satisfy the most restrictive test, any legal authority will do.[1]

So Plaintiffs pivot to a magic-words requirement, claiming the absence of a word similar to "tax" is dispositive. Resp.8. Not so. Clear statement requirement or not, as previously explained, the delegations in Sections 1182(f) and 1185(a) resemble *FEA v. Algonquin SNG, Inc.*, which held that the President lawfully imposed duties on imports under his statutory authority to take "such action … as he deems necessary to adjust the imports" of certain goods. 426 U.S. 548, 550-52 (1976). Plaintiffs observe that another section of the statute mentioned duties. Resp.9. But neither *Algonquin* nor *Skinner* relied on that other section. *Skinner*, 490 U.S. at 224 (using *Algonquin* as example of delegation). And Plaintiffs ignore *Learning Resources v. Trump*'s principal distinction of *Algonquin*: that the statute

---

[1] Plaintiffs point to no contrary cases. They claim *Learning Resources* rejected the same argument. That is false, the Supreme Court only interpreted IEEPA, declined to resolve other statutes, and no arguments were raised based on constitutional authorities. *Learning Resources*, 607 U.S. at 251.

there contained "sweeping, discretion-conferring language." 607 U.S. 229, 254 (2026). So do Sections 1182(f) and 1185(a). Tax or not, this delegation is sufficient.

Plaintiffs also attempt to draw a negative inference from other INA provisions that discuss fees. Resp.9. Of course, that directly contradicts their own attempt to distinguish *Algonquin*. Regardless, those INA provisions are expressly non-exclusive and establish fees for specific purposes. 8 U.S.C. §§ 1356(u)(1) (premium fee), 1184(c)(12) (fraud fee); 1356(m) (cover administrative costs). By contrast, Section 1182(f) permits "any restrictions," so it can include payments but is much broader. This highlights another distinction (Mot.11-13) from *Learning Resources*: the Supreme Court interpreted "regulate" to exclude a tariff power in part because the "neighboring" nine verbs provided additional context that the power was more limited. 607 U.S. at 250. By contrast, Section 1182(f) does not list ways the President may "restrict" entry; it broadly allows "*any* restrictions." 8 U.S.C. § 1182(f) (emphasis added).

Plaintiffs also assert that Section 1182(f) does not authorize imposition of a per-alien payment because no previous President has imposed such a restriction. Resp.6. One cannot assume Presidents exercised their power "maximally," however, lest previous actions give us "a law trapped in amber." *United States v. Rahimi*, 602 U.S. 680, 739 (2024) (Barrett, J., concurring). As Congress intended with its broad delegation of "any restrictions," Presidents have used proclamation in novel ways to

6

address unique issues. *See, e.g.,* 86 Fed. Reg. 59,603 (Oct. 25, 2021) (suspending entry of aliens without Covid vaccines); 85 Fed. Reg. 34,353 (June 4, 2020) (suspending J Visas for Chinese students); *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 187 (1993) (naval blockade for certain aliens arriving by sea). And again, head count payments have been used to restrict aliens before. *See Edye*, 112 U.S. at 589. Plaintiffs then list a parade of horribles, claiming the President could "raise and spend money on anything he desires." Resp.7-8. But the delegated authority in Sections 1182(f) and 1185(a) is limited to restrictions on the entry of aliens, and some of the fanciful hypotheticals might violate other constitutional limits. At bottom, none of this justifies further limiting Congress's "comprehensive delegation" of "any restrictions he may deem to be appropriate[,]" which clearly includes the payment here. *Hawaii*, 585 U.S. at 684-85.

## B. Plaintiffs Lack a Cause of Action.

1. For their *ultra vires* constitutional claim, Plaintiffs seem to agree that the dispute here is over the scope of the delegation in Sections 1182(f) and 1185(a), claiming that any action exceeding statutory authority creates a constitutional claim. Resp.14. That dooms their *ultra vires* claim because "plaintiffs would otherwise be able to avoid statutory limits on review by reframing any alleged statutory violation by the President as a constitutional one." *Glob. Health Council v. Trump*, 153 F.4th 1, 14-15 (D.C. Cir. 2025); *Dalton v. Specter*, 511 U.S. 462, 470 (1994). Plaintiffs

invoke the dissent in *Global Health* and claim that *Learning Resources* and *Illinois v. Trump* involved such *ultra vires* claims. Resp.15-16 (citing 155 F.4th 929, 937 (7th Cir. 2025) (distinguishing *Dalton* on discretion, not cause of action)). Neither case addressed the cause of action. Plaintiffs in *V.O.S. Selections, Inc. v. United States* did not specify the cause of action, but the case had to be heard in the Court of International Trade, 28 U.S.C. § 1581(i), thus the APA controlled, 28 U.S.C. § 2640(e). 772 F. Supp. 3d 1350, 1369 (Ct. Int'l Trade). And *Illinois* raised a *statutory* claim only. *Illinois v. Trump*, 2025 WL 2886645, at *13 n.13 (N.D. Ill. Oct. 10, 2025). Plaintiffs thus ask this Court to create a circuit split on the availability of an *ultra vires* separation-of-powers claim, and to contravene Supreme Court precedent to boot. *See Glob. Health*, 153 F.4th at 14-15; *Sustainability Inst. v. Trump*, 165 F.4th 817 (4th Cir. 2026); *Dalton*, 511 U.S. at 470.

Plaintiffs shift to arguing they can satisfy the requirements to bring an *ultra vires* statutory claim. Resp.16-17. But that is not the claim they brought and they have never argued for this standard. ECF 1 ¶¶229-236. Even so, Plaintiffs point to no "specific prohibition," *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 666 (2025), or show the Proclamation is "obviously beyond the terms of the statute," *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1263 (D.C. Cir. 2020). That dooms any statutory *ultra vires* claim.

**2.**    The APA claims fare no better. Plaintiffs undisputedly challenge the payment imposed by Proclamation (a Presidential action not subject to the APA), which the agencies merely implemented. Resp.17-18. Plaintiffs nonetheless reject a line of cases ruling that "mere ministerial implementation of presidential action" does not count as reviewable final agency actions. *Chamber*, 815 F. Supp. 3d at 109 (collecting cases). Plaintiffs thus try to end-run the rule that presidential actions are not subject to APA review. *See Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992).

Plaintiffs alternatively contend that the agencies' brief memoranda altered the Proclamation by limiting its scope to new petitions and narrowing the grounds for discretionary exceptions. Resp.19. If that were true Plaintiffs could not possibly be injured by such alterations; in any event, they have not explained how those alterations would be unlawful. Besides, Plaintiffs are wrong because the Proclamation made clear it applied only to new petitions filed after the effective date. 90 Fed. Reg. 46,029 § 2(a) (employer compliance with proclamation applies "prior to filing" petition). And the memoranda simply observe that exceptions will be rare; they do not purport to impose additional conditions on the Secretary's discretion beyond those in the proclamation itself. *See Del. Valley Reg'l Ctr., LLC v. U.S. Dep't of Homeland Sec.*, 106 F.4th 1195, 1203-06 (D.C. Cir. 2024) (USCIS Q&A was not final agency action and did not clearly reject a type of application).

Plaintiffs then barely defend their procedural and substantive APA claims on the merits, asserting in half a sentence that "those APA requirements serve the important purpose of ensuring that defendants exercised their discretion to implement the proclamation in an informed, reasonable manner." Resp.19. That effectively concedes that if the agencies are merely ministerially implementing the Proclamation, Plaintiffs cannot bring arbitrary-and-capricious or procedural claims. *See* Mot.17-19; *Trump v. Orr*, 146 S. Ct. 44, 46 (2025) (agency did not act "arbitrarily and capriciously by declining to depart from Presidential rules"). Allowing such claims would defeat Congress' textual delegation to the President of broad discretion to impose "any restrictions" "whenever" he decides. *Hawaii*, 585 U.S. at 683, 686-87, 708. In addition, Plaintiffs fail to respond to the exceptions to notice and comment rulemaking (Mot.17), waiving any justification of that ruling. Moreover, Plaintiffs do not even defend the total nationwide vacatur imposed by the district court. Mot.23. For all these reasons, the APA claims fail and vacatur was improper.

## II.    The Remaining Factors Support a Stay Pending Appeal.

All of the stay factors favor the Government. Plaintiffs mostly argue that the factors collapse with the merits (Resp.20-22), but the Government is right on the merits. Mot.19-21. The district court's order also irreparably harms the Government by thwarting the Proclamation, which protects American workers and national

security. 90 Fed. Reg. 46,027. Plaintiffs question those concerns. Resp.20. But Congress placed determinations about the national interest and national security in this area in the President, *Hawaii*, 585 U.S. at 686, and the first court to review the Proclamation credited the Government's factual findings, *Chamber*, 815 F. Supp. 3d at 94.

For public interest, Plaintiffs argue that Congress addressed the Proclamation's concerns and balanced the interests. Resp.21. Congress, however, "vest[d] the President with 'ample power' to impose entry restrictions in addition to those elsewhere enumerated in the INA." *Hawaii*, 585 U.S. at 668. The issues in the Proclamation were not directly addressed by minor fraud protections.

On the harm to Plaintiffs, the states do not deny that they have massive budgets, can petition for cap-exempt employees at any time, and may be able to get refunds. Mot.21 They instead complain about lost time and the benefits of having such employees now. Resp.21. But those harms can be avoided by paying now. Moreover, Plaintiffs elide the fact that they only moved for relief after another court upheld the Proclamation nearly 5 months after the Proclamation went into effect. ECF 87. So any harm from a stay pending appeal is minimal, whereas allowing the district court's order to take effect would defeat much of the Proclamation.

## CONCLUSION

This Court should stay the district court's order pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

*s/ Tiberius Davis*

TIBERIUS DAVIS
   *Counsel to the Assistant Attorney*
   *General*
   Civil Division
   U.S. Department of Justice
   950 Pennsylvania Avenue NW
   Washington, DC 20530
   (202)-860-8970

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2,600 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Times New Roman typeface.

*/s/ Tiberius Davis*
TIBERIUS DAVIS

# CERTIFICATE OF SERVICE

I, Tiberius Davis, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: July 2, 2026

/s/ *Tiberius Davis*
TIBERIUS DAVIS
Counsel to the Assistant Attorney General